**Alfred E. DAVIS et al., Plaintiffs,**

v.

**Walter E. WASHINGTON et al.,
Defendants.**

**Civ. A. No. 1086-70.**

United States District Court,
District of Columbia.

July 31, 1972.

Richard Sobol, Richard T. Seymour, Washington, D. C., for plaintiffs.

William Sweitzer, Asst. U. S. Atty., Washington, D. C., for the United States.

John Salyer, Asst. Corporation Counsel, Washington, D. C., for District of Columbia.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

This is a class action brought by several black police officers and rejected black applicants for employment as police officers who generally allege that the Metropolitan Police Department discriminates against blacks in its recruiting and promotions in violation of the Fifth Amendment to the Constitution of the United States and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*). Injunctions, damages and other affirmative relief are sought. There has been considerable informal discovery under arrangements approved by the Court at several pretrials. The recruiting aspects of the case are now before the Court on separate motions for summary judgment filed by plaintiffs and by both the federal and District of Columbia government defendants. The parties have supported their motions with statistical information not in dispute and affidavits. Detailed briefs in support of the respective positions were furnished.

In the District of Columbia, a police officer is accepted as a recruit and enters an intensive 17-week police academy training period if he meets acceptable character and physical standards, is a high school graduate or equivalent and receives a grade of at least 40 percent on Test 21. This Test is an examination that is used generally throughout the federal service. It was developed by the Civil Service Commission, not the Police Department, and is designed to test verbal ability, vocabulary, reading and comprehension.

■ The claims of discrimination in recruiting here advanced are directed solely to the Test. Plaintiffs do not allege an intentional discrimination or purposeful discriminatory acts. Rather they contend that the Test bears no relationship whatsoever to job performance, has a highly discriminatory impact in screening out black candidates and should be replaced.

Plaintiffs show that:

(a) The number of black police officers, while substantial, is not proportionate to the population mix of the city.

(b) A higher percentage of blacks fail the Test than whites.

(c) The Test has not been validated to establish its reliability for measuring subsequent job performance.

This showing, while minimal, will be accepted as sufficient to shift the burden of the inquiry to defendants and accordingly it must be determined whether the undisputed facts before the Court on these motions establish grounds for any remedies sought.

Police Chief Wilson took office August, 1969, and the recruiting of police officers has dramatically changed during his tenure. Since he took office, 44 percent of new recruits accepted for the police force have been black. Once an officer is recruited he is not washed out during the subsequent intensive training period at the academy but rather is given special assistance, where needed, to assure success. Thus this percentage reflects the number of black officers actually enrolled on the force. There is no legal requirement that a recruit be a resident of the District of Columbia. The urgent need to enroll additional officers has required recruiting beyond the confines of the District. Apart from one national effort, the recruiting effort has focused primarily on an area within a 50-mile radius of the center of the city. While there are no precise figures in the record, 44 percent black obviously closely approximates the population ratio for the eligible 20–29 age group in this wider area. A detailed survey of recruiting in the period January, 1970, to September, 1970, shows that more than 50 percent of officers recruited were black.

There is no proof that the Test is the only factor limiting black recruitment. Many blacks, numbering in the hundreds, passed the Test but for other reasons failed to report for duty, thus

showing how small a part the Test *per se* results in failure to recruit more blacks.

There is undisputed positive proof that the Department has followed a vigorous, systematic and persistent affirmative effort to enroll black policemen. The relatively higher percentage of black test failures must be appraised by taking into account this all-out effort to generate applications from blacks which may well have encouraged applicants with educational deficiencies to apply.

Thus the issue boils down to the merits of plaintiffs' contention that the Test is not related to job performance and to defendants' assertion that regardless of this relationship the Test is directly related to a determination of whether the applicant possesses sufficient skills requisite to the demands of the curriculum a recruit must master at the police academy.

▪ Plaintiffs and their expert affiants have misconceived the responsibilities and expertise required of modern police officers in a large metropolitan city such as the Nation's Capital. Study of the syllabus of the training course readily demonstrates the intricacy of police procedures, the emphasis on report writing, the need to differentiate elements of numerous offenses and legal rulings, and the subtleties of training required in behavioral sciences and related disciplines. Daily the significance of these skills demanding reasoning and verbal and literacy skills is borne out in the crucible of the criminal trial court. Law enforcement is a highly skilled professional service. The ability to swing a nightstick no longer measures a policeman's competency for his exacting role in this city. Plaintiffs, by reply brief without supporting facts, argue at the eleventh hour that the Test is culturally slanted to favor whites. There is no proof to this effect. The Test is sealed because it is given on a regular basis to many federal job applicants. There is nothing in its text that supports the argument advanced. The Court is satisfied that the undisputable facts prove

the test to be reasonably and directly related to the requirements of the police recruit training program and that it is neither so designed nor operates to discriminate against otherwise qualified blacks. Buckner v. Goodyear Tire and Rubber Co., 339 F.Supp. 1108, 1115 & n. 7 (N.D.Ala.1972) ; Spurlock v. United Airlines, Inc., 330 F.Supp. 228, 235 (D. Colo.1971) ; *see* Castro v. Beecher, 334 F.Supp. 930, 942 (D.Mass.1971), aff'd and rev'd in part, 459 F.2d 725 (1st Cir. 1972).

It is of some significance that high test scores and high job performance appear to correlate, but it is clear that blacks and whites with low test scores may often turn in a high job performance. This result may in part reflect the added verbal and educational training received during the training period. In any event, so many factors affect a policeman's performance on the job it is doubtful that a written test could ever be devised that would prophesy performance accurately in advance. None has been suggested here. Instead plaintiffs propose that hiring be conducted without any test or merely a lowering of the acceptable "pass" rating from 40 to 35. The lack of job performance validation does not defeat the Test, given its direct relationship to recruiting and the valid part it plays in this process.

The Department is constantly raising and improving its professional standards. The training program changes as funds are available and needs to emphasize different aspects of a policeman's complex responsibilities are perceived. The day may soon be at hand when a college degree will be a prerequisite and advancement will depend in large part upon graduate degree experience. The FBI and the military have moved in this direction, and the President's Crime Commission has urged that police recruiting and training take this course.

▪ Neither the Fifth Amendment nor the Civil Rights Act require that brakes be placed upon efforts to upgrade recruiting and job standards in law enforcement work. The plaintiffs' claim is

**18**

not supported by any substantial evidence. The defendants should not be required on this showing to lower standards or to abandon efforts to achieve excellence.

The Metropolitan Police Department is a model nationwide for its success in bridging racial barriers. It would be a setback for blacks and whites alike to lower standards of recruitment. The proof is wholly lacking that a police officer qualifies on the color of his skin rather than ability.

Federal defendants' motion for summary judgment is granted and the amended complaint is dismissed as to them; the District of Columbia defendants' motion for partial summary judgment is granted; and plaintiffs' motion for partial summary judgment is denied.

A status conference concerning the promotional aspects of the case is set for September 5, 1972, at 12 Noon.

So ordered.