**Anthony ARMENO et al.**

v.

**BRIDGEPORT CIVIL SERVICE
COMMISSION et al.**

Civ. No. B–77–337.

United States District Court,
D. Connecticut.

Jan. 30, 1978.

Howard T. Owens, Jr., Stephen F. Donahue, Bridgeport, Conn., for plaintiffs.

Thomas W. Bucci, Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION ON MOTION TO REMAND

NEWMAN, District Judge.

This remand petition raises unsettled issues concerning the relationships between federal and state law and between federal and state courts in the implementation of remedies for civil rights violations. The

respondents in this Court are unsuccessful applicants for the position of police officer in the Bridgeport Police Department. They were plaintiffs in a suit in the Superior Court for Fairfield County against the defendant members and director of the Bridgeport Civil Service Commission, who are petitioners in this Court. The state court suit challenged the lawfulness of an examination administered by the defendants on June 11, 1977. The exam was challenged solely on state law grounds—namely, lack of job-relatedness to the extent required by Conn. Gen. Stat. § 7–413 and lack of notice of the scope of the exam to the extent required by the same state statute. The state court defendants removed the suit to this Court, alleging removal jurisdiction under 28 U.S.C. § 1443, and the plaintiffs move to remand.

The issues presented under § 1443 arise in a context of events starting in 1973. In that year this Court adjudicated a racial challenge to the hiring and promotion practices of the Bridgeport Police Department. *Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission*, 354 F.Supp. 778 (D.Conn.1973) (*Guardians I*). That suit was brought pursuant to 42 U.S.C. §§ 1981 and 1983, prior to the effective date of the expansion of Title VII of the Civil Rights Act of 1964 to cover employment by states and political subdivisions. P.L. 92–261 (1972), 42 U.S.C.A. § 2000e(b). Applying the then applicable constitutional standard in this Circuit of whether a test shown to have a significant racially discriminatory impact was sufficiently job-related to justify its use despite such effect, see *Chance v. Board of Examiners*, 458 F.2d 1167 (2d Cir. 1972), this Court declared the challenged entry level exam unconstitutional and enjoined the defendants "from using patrolman's examinations of the type found discriminatory in this suit in the manner such examinations have been used." 354 F.Supp. at 798, ¶ 1. The decree also imposed minority quota requirements concerning the future hiring of patrolmen and supervisory officers. The quota hiring

for patrolmen was to continue, under a prescribed formula, until the number of minority patrolmen in the Department reached 50. The decree also contained in ¶ 1 the following provision concerning prior court approval of future examinations:

> Until the remaining provisions of this decree have been complied with, any written examination for the rank of patrolman which the defendants propose to use together with the use to be made of its results shall, prior to use, be submitted to the court for review and approval together with satisfactory evidence that the proposed examination is job related and not discriminatory in the manner in which it will be used.

Jurisdiction was retained for the implementation of the decree.

The Court of Appeals affirmed the merits of the ruling and the remedy with respect to hiring of patrolmen, but reversed the portion of the remedy concerning hiring of supervisory personnel. 482 F.2d 1333 (2d Cir. 1973). On remand, this Court deleted the provisions of the decree concerning supervisory ranks, added minor provisions concerning implementation of the decree, and left unchanged the provisions of ¶ 1 enjoining future use of discriminatory exams and requiring prior Court approval of future exams for patrolmen. Memorandum of Decision With Respect to Remedy, October 3, 1973.

On September 30, 1976, the state court defendants presented to this Court a new exam they proposed to use for hiring police officers. The plaintiffs in *Guardians I* objected to the use of that exam and sought to persuade the state court defendants to select a different type of exam. That objection was never ruled on because of subsequent developments. On October 26, 1976, the Bridgeport Police Department made the last appointment from the list of qualified minority applicants to satisfy the requirement that quota hiring be used until the number of minority patrolmen in the de-

**556**

partment reached 50. Despite this compliance with the terms of the original decree and the consequent termination of the requirement of prior court approval of new exams, counsel for the parties in *Guardians I* brought to this Court's attention, prior to use, the prospect of using a new police officer's examination, the one that is the subject of the pending litigation. Neither this new exam, nor any materials supporting the propriety of the exam, were submitted for court review. Court approval was not formally sought, and no order was entered approving the exam. However, the parties were entitled to conclude that the Court acquiesced in the use of the exam, an acquiescence based solely on the fact that the parties to the *Guardians I* litigation, with the advice of their testing advisors, were in agreement that the proposed test was an appropriate one. Against this background, the existence of removal jurisdiction under 28 U.S.C. § 1443 can now be considered.

Section 1443 creates three sets of circumstances permitting removal of civil rights cases. Section 1443(1) permits a defendant to remove when he is denied or cannot enforce in state court a right secured by a federal equal rights law. See *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). The first clause of § 1443(2) (the "color of authority" clause) permits certain defendants to remove when sued for taking some action under color of authority derived from a federal equal rights law. See *Bohlander v. Independent School District No. One*, 420 F.2d 693 (10th Cir. 1969). The second clause of § 1443(2) (the "refusal to act" clause) permits certain defendants to remove when sued for refusing to take some action on the ground that taking the action would be inconsistent with a federal equal rights law. See

*Bridgeport Education Ass'n v. Zinner*, 415 F.Supp. 715 (D.Conn.1976). The removal petition does not specify which subsection or clause of § 1443 is relied on, though the allegations of the petition appear to invoke the "color of authority" clause of § 1443(2). In any event, § 1443(1) and the "refusal to act" clause of § 1443(2) are plainly unavailable. The state court defendants are not alleging that they have been denied or cannot enforce in the state court rights secured by a federal equal rights law. Nor are they alleging that they have refused to follow the requirements of state law on the ground that such requirements are inconsistent with a federal equal rights law. The job-relatedness requirement of state law is surely not inconsistent with any federal law requirements, though, as will be seen, it may not necessarily be as rigorous as federal requirements in certain contexts.

■ The state court defendants advance two grounds for removal under the "color of authority" clause of § 1443(2). First, they contend that in selecting and administering the challenged examination, they were acting under color of authority derived from Title VII and 42 U.S.C. § 1983. Title VII plainly qualifies as a law providing for equal rights within the meaning of § 1443, see *Georgia v. Rachel, supra*, 384 U.S. at 792, 86 S.Ct. 1783, though § 1983 may not.[1] But the "color of authority" clause is available only to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *Greenwood v. Peacock*, 384 U.S. 808, 824, 86 S.Ct. 1800, 1810, 16 L.Ed.2d 944 (1966). Simply by endeavoring to comply with the obligations of federal statutory law, the state court defendants did not become federal officers nor did they

1. The Second Circuit has explicitly stated that § 1983 does not qualify as a law providing for equal rights within the meaning of § 1443. *New York v. Galamison*, 342 F.2d 255, 271 (2d Cir. 1965). It is not entirely clear whether § 1983 never qualifies or whether it might qual-

ify when it is being used specifically to vindicate an alleged denial of equal protection of the laws on racial grounds, as distinguished from vindication of rights generally protected by the Constitution.

acquire authorization to act with or for federal officers. Federal court jurisdiction would be expanded to an extraordinary extent if every employer, obliged to observe the requirements of Title VII, could remove to federal court every state court suit in which his hiring practices were challenged for non-compliance with state law requirements. Not only would there be a vast extension of federal jurisdiction, but such jurisdiction would be exercised on issues of state law construction. Leaving such an employer to defend in state court does not mean he can be whipsawed in two different jurisdictions between federal and state statutory requirements that are inconsistent. The "refusal to act" clause of § 1443(2) adequately assures a right of removal to at least a public employer, and perhaps to a private employer, see *Bridgeport Education Ass'n v. Zinner, supra*, 415 F.Supp. at 720–21, when he has declined to observe state requirements that he believes are inconsistent with the obligations imposed upon him by a federal law protecting equal rights.

The second ground advanced by the state court defendants is more substantial. They contend they were acting under color of authority derived from the judgment of this Court in *Guardians I*. It has been held that state officials carrying out a court-ordered school desegregation plan are persons authorized to act for a federal officer (the court) within the meaning of the "color of authority" clause of § 1443(2), as construed in *Greenwood v. Peacock, supra. Burns v. Board of School Commissioners*, 302 F.Supp. 309, 312 (S.D.Ind.1969), *aff'd*, 437 F.2d 1143 (7th Cir. 1971); see also *Bohlander v. Independent School District No. One, supra*. The invocation of that principle to this case requires consideration of two separate aspects of the decree in *Guardians I.*[2]

As mentioned earlier, ¶ 1 of the decree enjoined the defendants "from using patrolman's examinations of the type found discriminatory in this suit in the manner such examinations have been used." No time limit was set on the duration of this injunction, and no motion has been made to vacate it as "no longer warranted." See *Milk Drivers Union Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 299, 61 S.Ct. 552, 85 L.Ed. 836 (1941). Thus, this provision remains in force. However, it stretches the principle of the *Burns* and *Bohlander* cases and the "color of authority" clause too far to contend that the state court defendants are authorized to act for a federal officer (the court) simply because they are obligated *not* to use discriminatory exams. In reality this provision of the decree in *Guardians I* only made defendants subject to this Court's contempt powers in the event they failed to observe requirements of federal law. The injunction did not authorize the defendants to act for this Court in "affirmatively" executing any duties. *Greenwood v. Peacock, supra*, 384 U.S. at 824, 86 S.Ct. 1800. Its command was negative only: to refrain from using discriminatory exams.

The wording of the injunction is not necessarily determinative. There may be situations where an injunction, phrased in negative terms, effectively impels a defendant to act in virtually only one way, and in such circumstances the defendant may well be authorized to act for the court in affirmatively executing duties. But the entire thrust of *Greenwood v. Peacock, supra*, and the legislative history of the Reconstruction statutes there recounted, 384 U.S. at 815–24, 86 S.Ct. 1800, see also *New York v. Galamison*, 342 F.2d 255 (2d Cir. 1965), counsel against permitting the usual negative command of a federal court injunction to constitute the type of authorization to affirmatively execute duties that would satisfy the requirements of § 1443(2). A civil service commissioner ordered not to use discriminatory exams is simply not

---

2. The *Burns-Bohlander* principle still requires that the state officials acting for the court are implementing a law providing for equal rights. That requirement appears to be satisfied in this case because the cause of action pleaded in *Guardians I* was grounded on § 1981, which clearly qualifies under § 1443, whatever doubts there may be as to § 1983. *See* footnote 1, *supra*.

analogous to a person deputized to assist the Freedmen's Bureau in making an arrest. As with authority derived directly from the obligations of statutes such as Title VII, removal jurisdiction predicated on authority derived from an injunction that only forbids departure from the obligations of such statutes would greatly increase federal jurisdiction and extend its exercise to a variety of state law issues. For example, in this case, simply because the defendants are enjoined from using discriminatory exams is a wholly insufficient reason to litigate in a federal court whether the notice given to announce the particular exam chosen by the defendants complies with state law. And while defendants bound by federal injunctions may prefer the convenience of litigating in a single forum all disputes in any way relating to the subject matter of the injunction, federalism frequently exacts some cost in efficiency in maintaining the statutorily circumscribed role of federal courts and the broad role of state courts, especially on issues of state law. Moreover, the state officer defendant caught between conflicting requirements of state law and a federal injunction can always remove pursuant to the "refusal to act" clause of § 1443(2).

■ The state court defendants also rely on the more specific provision of the decree in *Guardians I,* which required prior court approval of new exams until compliance with the hiring provisions. If a federal court orders that a particular exam be used, then the local officials would seem clearly to be authorized to act for the court in affirmatively executing duties. And, in some circumstances, formal court approval of an exam may constitute sufficient authorization to satisfy the "color of authority" clause, even in the absence of a specific

order directing use of the exam. Whether such approval can ever be inferred in the absence of a motion for approval, presentation of supporting materials, and explicit court action need not be resolved in this case, however, because by the very terms of the decree in *Guardians I* the authority for prior court approval of new exams ended with the hiring of the 50th minority patrolman. This occurred before the prospect of using the new exam was ever presented to this Court.[3]

Two considerations underscore the appropriateness of giving full effect to the termination of this Court's authority to give prior approval to new exams. First, is the advent of *Washington v. Davis,* 426 U.S. 229, 244–45 n.12, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597 (1976), expressing explicit disagreement with decisions such as *Guardians I* "to the extent that those cases rested on or expressed the view that proof of discriminatory racial purpose is unnecessary in making out an equal protection violation . . . ." The Second Circuit was recently confronted with the argument that *Washington v. Davis* requires dismissal of a § 1983 suit that, like *Guardians I,* had sustained an equal protection attack on an employment exam without proof of discriminatory racial purpose and had resulted in a judgment with jurisdiction retained for prospective relief including prior approval of a new exam. *Chance v. Board of Examiners,* 561 F.2d 1079 (2d Cir. 1977) *(Chance IV).* The Court of Appeals directed the trial court to relinquish jurisdiction over permanent prospective relief. In *Chance IV,* as in this case, the exercise of continuing jurisdiction over prospective relief would have required federal court decision on unsettled issues of state law. In light of *Chance IV,* it would be most inappropriate to ignore

---

**3.** The state court defendants make the further point that prior to the hiring of the 50th minority patrolman, they initiated the procedure for obtaining prior court approval by presenting the exam that was subsequently rejected by plaintiffs in *Guardians I.* Despite the fact that the prospect of using the exam ultimately given was not presented to this Court until after the hiring of the 50th minority patrolman, the state court defendants contend that once the approval process had commenced, this Court could not thereafter be divested of approval authority. But there is no reason why the specific authority for prior approval of exams should not terminate precisely with the event that was specified in the original decree as terminating such authority.

the automatic termination of this Court's authority to give prior approval to new exams and use such extinguished authority as the predicate for removal of a state court lawsuit brought solely to enforce state law requirements that, however construed, are not inconsistent with federal law.

A second consideration concerns the relationship between the new exam and the remedy provisions of the decree in *Guardians I.* The plaintiffs adjudicated to have been denied the equal protection of the laws by the exam declared invalid in *Guardians I* have already had the wrong done to them remedied by the quota hiring provisions of the decree. These plaintiffs had an opportunity to qualify for the minority pool from which patrolman appointments were made on a priority basis until the target of 50 was reached. 354 F.Supp. at 798–99. The requirement of prior court approval of new exams was thus entirely a prophylactic measure to guard against future denial of rights. The situation in this respect is different from *Burns* and *Bohlander,* where the court-ordered plan for school desegregation, which had been attacked in the removed state court proceeding, was the specific remedy for the plaintiffs' grievance. Any state court delay in the implementation of such a plan, even because of noncompliance with an otherwise valid provision of state law, would have risked delaying the vindication of the plaintiffs' right to a desegregated education. Similarly in the context of employment exams, a federal court that finds a plaintiff's rights (whether grounded on the Fourteenth Amendment or Title VII) denied by a discriminatory exam provides a precise remedy for the plaintiff's grievance by requiring a new exam and insisting on prior court approval of it.[4] If

such an exam is approved, then state court interference with it, even for non-compliance with valid state law requirements, delays vindication of the federal plaintiff's right. In such circumstances it is entirely appropriate for the federal court to weigh the equities and determine whether under all the circumstances the need for a promptly implemented remedy (the new exam) outweighs the state's interest in compliance with its requirement. But where, as in this case, the grievance of the federal plaintiffs has already been vindicated by a specific remedy and prior court approval of future exams is wholly prospective in effect, there is far less justification for interfering with a state court's determination of state law requirements and of the consequences of any non-compliance.

Since § 1443 does not, in the circumstances of this case, permit removal, the motion for remand must be granted.[5] This leaves the state court entirely free to decide whether the new exam violates any provision of state law. Even though job-relatedness appears to be an issue arising under both state and federal law, the standards are not necessarily the same. The job-relatedness found lacking in *Guardians I* was a degree of job-relatedness sufficient to justify the discriminatory impact of the exam challenged in that case. The state standard, adjudicated in the absence of discriminatory impact, might be satisfied simply by evidence that the exam rationally measures aspects of intelligence appropriate for police recruit training. *Cf. Davis v. Washington,* 348 F.Supp. 15 (D.D.C.1972). In any event, even if the evidence of job-relatedness is inadequate to satisfy the state standard, it does not necessarily follow that there will be sufficient equities to warrant

---

4. As the Court of Appeals specifically noted in *Chance IV*, when the trial judge enjoined the original exam, "he quite properly provided not only for interim relief but for a continuing supervision by the District Court to decide whether any new proposed examination would meet what was believed to be the constitutional standard. This was a proper exercise of federal jurisdiction, and we stress that it is generally a procedure that should be adopted by district judges." 561 F.2d at 1091.

5. The state court defendants also contend in the removal petition that the challenged exam was selected by them pursuant to an order of this Court in *Bridgeport Guardians v. Bridgeport Police Department,* Civil No. B–76–319 (*Guardians II*). That suit concerns the validity of an exam for the rank of detective. This Court denied a motion for a preliminary injunction. 431 F.Supp. 931 (D.Conn.1977). No order in that case affects the current lawsuit.

prohibiting the use of the results of this particular exam. Both the state law standard and the consequences of failing to meet it are matters best left to the state court.

The motion to remand is granted.