Meade C. **FOLTS**

v.

**CITY OF RICHMOND et al.**

**Civ. A. No. 79–0842–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 5, 1979.

J. Durwood Felton, III, Felton & Fagan, Richmond, Va., for plaintiff.

T. S. Ellis, III, J. C. Thomas, Hunton & Williams, William R. Cogar, Carter Glass, IV, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

## I.

On 10 October 1979 plaintiff Meade C. Folts, a voter in the Ninth Ward of the City of Richmond, Virginia, filed a Bill for a Declaratory Judgment in Division II of the Circuit Court for the City of Richmond. Named as defendants were the City of Richmond, the nine members of the Richmond City Council, the City Attorney, and the City Manager. Plaintiff alleged that the wards are malapportioned, and that plaintiff and all registered voters of the Ninth Ward are underrepresented in viola-

tion of the equal protection clause of the Fourteenth Amendment of the United States Constitution. Plaintiff sought an order declaring Richmond City Ordinance No. 76–262–230, which establishes the wards, a nullity; an order restraining the defendants from holding councilmanic elections until the wards are reapportioned; and an order requiring the councilmen to reapportion the City.

On the same day, 10 October 1979, defendants Kemp, Thompson, and Wake (the Kemp defendants) filed an Answer denying the wards are malapportioned. These defendants asked the Circuit Court for an order declaring that the City of Richmond is without power under State law to reapportion the City election districts prior to 1 June 1981.[1]

Contemporaneous with their Answer the Kemp defendants filed a cross-bill against all other defendants (the Marsh defendants). The cross-bill alleged that the Marsh defendants introduced and caused to be passed at a meeting of the Richmond City Council on 8 October 1979 "an irrational, illegal, and racially motivated scheme and schedule of redistricting." The cross-bill sought an injunction temporarily enjoining the City and the defendant members of the Council from taking any action with respect to redistricting. An *ex parte* decree having that effect was entered on the afternoon of 10 October by the Richmond Circuit Court.

After first seeking a hearing in Circuit Court to dissolve the injunction, the Marsh defendants, on 19 October 1979, filed a petition for removal in this Court. On 29 October 1979 this Court modified and extended to 8 November the temporary injunction issued by the Circuit Court of the City of Richmond. The extension was granted pending briefing on motions for remand. If not sooner remanded, a hearing on a preliminary injunction was set for 6 November 1979. The petitioners allege that this Court has removal jurisdiction pursu-

1. Va.Code § 24.1–40.3 B (Cumm.Supp.1979) provides that "[n]o election district . . . shall be created, divided, abolished or consolidated, or the boundaries otherwise changed from July one, nineteen hundred seventy-six, through May thirty-one, nineteen hundred eighty-one . . . ."

ant to 28 U.S.C. §§ 1441(a), (c), 1443(2). Plaintiff Folts and the Kemp defendants, represented by different counsel, have filed separate motions to remand. The remand motions are before the Court and are ripe for determination.

## II.

### A. *Section 1441(a) Removal.*

■ 28 U.S.C. § 1441(a) provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed [to federal court] by the defendant or defendants." This statute has been construed uniformly to require, in cases involving multiple defendants, that all defendants must join in the petition for removal. *Gableman v. Peoria, Decatur & Evansville Railway Co.*, 179 U.S. 335, 21 S.Ct. 171, 45 L.Ed. 220 (1900); *Perpetual Building & Loan Ass'n v. Series Directors of Equitable Building & Loan Ass'n, Series No. 52*, 217 F.2d 1 (4th Cir. 1954), *cert. denied*, 349 U.S. 911, 75 S.Ct. 599, 99 L.Ed. 1246 (1955); *Baldwin v. Perdue Inc.*, 451 F.Supp. 373 (E.D.Va.1978).

The removal petition before this Court was filed and signed by the Marsh defendants only. The petition was not joined by the Kemp defendants. The Marsh and the Kemp defendants were named, without distinction among them, as party defendants to the State court suit brought by plaintiff Folts. Thus, under the general rule the Kemp defendants as well as the Marsh defendants must concur in the removal petition if this Court is to exercise jurisdiction under 28 U.S.C. § 1441(a).

In order to avoid the effect of the general rule, counsel for the Marsh defendants argue that it is incumbent upon this Court to realign the parties according to their true

interests, and that when this is accomplished the Marsh defendants will stand alone. The Court acknowledges its authority to look beyond the parties nominal designation. *Armstrong Cover Co. v. Whitfield*, 418 F.Supp. 972 (N.D.Ga.1976); *Ford Motor Credit Co. v. Liles*, 399 F.Supp. 1282 (W.D. Okl.1975). But the Court does not agree with the contention that the Kemp defendants should be realigned as parties plaintiff alongside plaintiff Folts. In the State court plaintiff Folts brought suit against all defendants—Kemp defendants and Marsh defendants—seeking an order *compelling* reapportionment of the wards of the City of Richmond. The interests of plaintiff Folts and the Kemp defendants therefore are antagonistic, a conclusion reinforced by remembering that the Kemp defendants, as cross-complainants, sought and received a temporary injunction *forbidding* reapportionment. Only in their desire to return to State court jurisdiction do Folts and the Kemp defendants share views.

The petitioners also contend, with notable skill, that the Kemp defendants are nominal or formal parties who need not join in the petition for removal.[2] It is true that only necessary or indispensable parties are required to join in a removal petition, and that nominal or formal parties may be disregarded. *Tri-Cities Newspaper, Inc. v. Tri-Cities P.P. & A. Local 349*, 427 F.2d 325 (5th Cir. 1970); *Marsden v. Southern Flight Service, Inc.*, 192 F.Supp. 418 (M.D.N.C. 1961). The Court finds, however, that the Kemp defendants are not merely formal or nominal parties. Each is a member of the Richmond City Council, the legislative body which is vested with authority to apportion the representation in the City by establishing the election districts. Va.Code § 24.1–36 (Cumm.Supp.1979). Without the Kemp defendants as parties the position advocated by them simply would not be represented in

---

2. The gist of petitioners argument is that the Richmond City Charter requires the City Council to act by the affirmative vote of at least five members, and therefore the three Kemp defendants—although members of the Council—are powerless to promulgate Council policy. Further, it is argued that because six Council members (the Marsh defendants) have signed

the petition, the will of the Council mandates removal. These arguments might appeal to a parliamentarian, but they have no basis in law.

The petitioners also submit that the City Council acts as an entity, and that all Council members as individuals are surplus defendants who need not join in the removal petition.

the suit. The Kemp defendants being necessary parties who have not joined in the petition to remove, the Court is without the authority conferred upon federal courts by § 1441(a).[3]

The Court recognizes that the issue presented in this law suit is a part of a larger and more complex political issue between the "ins" and the "outs" of City government. In politics positions change in a trice and today's antagonists are tomorrow's allies. Thus it would not be unexpected if there be an about face with all defendants seeking removal by a joint petition. This would avail them nought. A legally indistinguishable episode occurred in *Baldwin v. Perdue, Inc.*, 451 F.Supp. 373 (E.D.Va.1978) and this Court was obliged to remand. There, as here, a defendant had sought relief in State court from a co-defendant by means of a cross-bill. Having sought such affirmative relief the cross-bill plaintiff waived his right to removal and thus a subsequent joinder in a petition for removal was ineffective.

### B. *Section 1441(c) Removal.*

28 U.S.C. § 1441(c) provides that "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed . . . ."[4] The Marsh defendants contend that the Kemp defendants cross-bill constitutes a separate and independent claim which would be removable if

sued upon alone, and therefore that this Court has removal jurisdiction. The Court cannot agree.

Leading commentators and the majority of courts concur that § 1441(c) should not be interpreted to authorize removal by third-party or cross-claim defendants. *E. g., Greater New York Mutual Insurance Co. v. Anchor Construction Co.*, 326 F.Supp. 245 (E.D.Pa.1971); 1A J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.163[4.–6], 0.167[9] (2d ed. 1979); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3724 at 643–46 (1976). Chiefly three reasons have been advanced to support this rule. First, § 1441(c), properly construed, applies only to claims brought by the plaintiff or plaintiffs. *United Founders Life Insurance Co. v. Blackhawk Holding Corp.*, 341 F.Supp. 483 (E.D.Wis.1972). Second, the term "defendant" as used in § 1441 is limited to plaintiff's defendant. *Fiblenski v. Hirschback Motor Lines, Inc.*, 304 F.Supp. 283 (E.D.Ark.1969). Third, cross-claims rarely are sufficiently unrelated to the main claim to be deemed a separate and independent claim.[5] *Verschell v. Fireman's Fund Insurance Co.*, 257 F.Supp. 153 (S.D.N.Y.1966). The Court finds this authority persuasive, and thus rules that it lacks removal jurisdiction under § 1441(c).

### C. *Section 1443(2) Removal.*

28 U.S.C. § 1443(2) provides that a civil action commenced in State court "[f]or any act under color of authority derived from

---

**3.** This ruling disposes of any assertion petitioners might make under § 1441(b). This section, which permits removal of cases "arising under" federal law, is subject to the same requirement as § 1441(a) that all defendants join in the removal petition. *See Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir. 1960); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3727 at 693 (1976). The limitation requiring the concurrence of all defendants does not operate, however, on removal under § 1442. *See Jones v. Elliott*, 94 F.Supp. 567 (E.D.Va. 1950).

**4.** *See generally* Cohen, *Problems in the Removal of a "Separate and Independent Claim or Cause of Action,"* 46 Minn.L.Rev. 1 (1961);

Duvall, *Removal—The "Separate and Independent Claim,"* 7 Okla.L.Rev. 385 (1954); Moore & VanDercreek, *Multi-Party, Multi-Claim Removal Problems: The Separate and Independent Claim Under Section 1441(c)*, 46 Iowa L.Rev. 489 (1961).

**5.** This observation is particularly apt in this case. The Kemp defendants cross-bill in Richmond Circuit Court presumptively was filed pursuant to a rule of practice established by the Virginia Supreme Court that allows defendants to "assert against other defendants or against new parties any claim *germane to the subject matter of the suit.*" Va.R.Ct. 2:14 (emphasis supplied).

any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law," [6] may be removed to federal court. In their removal petition the Marsh defendants allege that this Court has removal jurisdiction under both the "color of authority" clause and the "refusal" clause of 28 U.S.C. § 1443(2).

The "color of authority" clause confers a privilege of removal only upon "federal officers and . . . persons assisting such officers in the performance of their official duties." *Greenwood v. Peacock,* 384 U.S. 808, 815, 824, 86 S.Ct. 1800, 1805, 16 L.Ed.2d 944 (1966).[7] Petitioners argue that they are "assisting" under federal law "with and for federal officials" in providing equal voting rights, and thus are within the ambit of § 1443(2). The argument is ingenious but it is without merit. Compliance with federal statutes of general application or even federal court injunctions does not bring municipal officers within the "color of authority" clause of § 1443(2). *Tucker v. Cleveland Board of Education,* 465 F.Supp. 687 (N.D.Ohio 1979); *Armeno v. Bridgeport Civil Service Comm.,* 446 F.Supp. 553 (D.Conn.1978).

Even if it were granted that the Marsh defendants are acting with, for, or as federal officials, the petitioners could not avail themselves of § 1443(2). Under both the "color of authority" clause and the "refusal" clause removal must be predicated upon a federal law providing "for equal rights." This provision has been narrowly

construed to mean laws that establish "specific civil rights stated in terms of racial equality." [8] *Johnson v. Mississippi,* 421 U.S. 213, 219, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975); *Georgia v. Rachel,* 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *Delavigne v. Delavigne,* 530 F.2d 598, 600 (4th Cir. 1976). The apportionment of the City of Richmond, the issue in this case, derives from State law though it is or may be affected by the equal protection clause of the Fourteenth Amendment. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Baker v. Carr,* 369 U.S. 186 (1962). The Fourteenth Amendment principle of one-man, one-vote, however, seeks to ensure equal representation on the basis of population; it is not a race equality concept within the meaning of § 1443(2). Further, though defenses to the complaint may involve considerations of race, the Court looks to the complaint filed in State court to determine the propriety of removal—not to the defenses. *Cabe v. Pennwalt Corp.,* 372 F.Supp. 780, 783 (W.D.N.C.1974).

### III.

This Court is mindful of the care that must be exercised in ruling on a motion to remand. *Smith v. Voss Oil Co.,* 166 F.Supp. 905 (D.Wyo.1958); *Vann v. Jackson,* 165 F.Supp. 377 (E.D.N.C.1958). The statutory rights granted by Congress allowing removal of a case from State to federal court are valuable rights. Because many remand orders are not subject to appellate review,[9] an erroneous denial of a removal petition prop-

---

6. As an aside, the Court believes that is among the more muddy passages in the United States Code.

7. Removal pursuant to § 1443(1), by contrast, is available to private persons as well as those acting under color of authority. *Greenwood v. Peacock,* 384 U.S. 808, 816, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

8. Representative decisions illustrating particular federal statutes couched in the specific language of racial equality demanded by § 1443 include *Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966) (42 U.S.C. §§ 1971, 1981); *Georgia v. Rachel,* 384 U.S. 780 (1966) (42 U.S.C. § 2000a); *Whatley v. City of Vidalia,* 399 F.2d 521 (5th Cir. 1968) (42 U.S.C. § 1973i(b)). Several constitutional provisions,

such as the First, Fifth, Thirteenth, and Fourteenth Amendments, have been held not to provide a basis for removal under § 1443. *See City of Evanston v. Buick,* 421 F.2d 595 (7th Cir. 1970). This Court believes that a provision of general application, such as the equal protection clause, may sustain removal under § 1443, but only if the alleged violation involves discrimination based on race.

9. 28 U.S.C. § 1447(d) precludes appellate review of remand decisions pursuant to § 1441. Remand decisions under § 1443, however, are appealable. *See Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).

erly may be characterized, in some instances, as a wrong without remedy. *Boatmen's Bank v. Fritzlen,* 135 F. 650, 655 (8th Cir. 1905). The Court has analyzed and evaluated the removal petition before it, and is satisfied that an order to remand is required by well-established law.[10]

▮ Finally, the issue here, essentially, involves the government of the City of Richmond, Virginia. Such an issue, absent exceptional circumstances, is pre-eminently of local and State concern. In the absence of a clear right to federal adjudication,[11] the federal system envisions that State and local issues be decided by State and local courts.

---

**10.** It has been suggested that a federal forum is preferable in this case because federal procedure, unlike State procedure, provides for class action litigation. That the federal rules allow class actions while State procedure does not is a fact of little consequence. A declaratory judgment granting injunctive relief only perforce will govern this controversy, whether there be an individual or a class plaintiff. In such case the class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R. Civ.P. 23(b)(3).

**11.** It is an established proposition that removal statutes are strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Courts are inclined to resolve doubts against removal. *Greenshields v. Warren Petroleum Corp.,* 248 F.2d 61 (10th Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957). Professor Wright has explained that "[t]he prevailing judicial attitude rests on the inexpediency, if not unfairness, of exposing [the parties] to . . . a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal." 14 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3721 at 537 (1976).