In the Matter of the Application of William QUIRK; Joseph Walsh; Albert Alfano; Gilbert Acevedo, et al., Plaintiffs,

v.

The STATE OF NEW YORK OFFICE OF COURT ADMINISTRATION; The New York State Civil Service Commission; The Director of Personnel for the New York State Department of Civil Service; and The Administrative Director of the New York State Department of Civil Service, Defendants.

No. 82 Civ. 3845–CSH.

United States District Court, S.D. New York.

Oct. 26, 1982.

Paul A. Feigenbaum, New York City, for Office Court Admin.; Michael Colodner, John Eiseman, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, for State defendants; Stanley A. Camhi, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action was commenced as a special proceeding pursuant to Article 78 in the Supreme Court of the State of New York against the State of New York Office of Court Administration ("OCA") and the New York State Civil Service Commission[1] seeking a determination that the OCA's refusal to grant a preference in hiring to provisional Uniformed Court Officers ("UCOs") appointed after May 21, 1980 was arbitrary and capricious. Plaintiffs, who are provisional UCOs appointed after that date, base their claim on the OCA's failure to terminate provisional UCOs within nine months after their appointment, a failure which plaintiffs allege violates state civil service law. Plaintiffs seek an order enjoining defendants "from refusing to grant petitioners preference for permanent employment as Uniformed Court Officers, provided they pass[ed] the May 22, 1982 examination" (Notice of Petition at 9).

The state court defendants removed the suit to federal court alleging removal jurisdiction under 28 U.S.C. § 1443, the civil rights removal statute. The case was assigned to the undersigned as related to *Underwood v. State of New York Office of Court Administration, et al.,* 78 Civ. 4832, in which this Court is adjudicating a racial challenge to the hiring practices for UCOs. Plaintiffs have now filed papers in opposition to removal which I treat as a motion to remand this case back to state court.

---

1. Officials of the New York State Civil Service Commission are also named as defendants.

## THE *UNDERWOOD* CASE

The *Underwood* case was filed in 1978 by a class of minority plaintiffs seeking positions as UCOs in the New York State court system. The suit, brought against the OCA, the Chief Administrative Judge of the State of New York and various officers of the New York State Civil Service Commission and Department of Civil Service, challenged the validity of an examination for the position of UCO administered in December, 1977. Plaintiffs claimed that the examination unconstitutionally discriminated against them in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

Shortly after the suit was commenced, defendant OCA agreed to refrain from making permanent UCO appointments on the basis of the challenged examination; provisional appointments were made during the course of the litigation. Extended negotiations between the parties resulted in a settlement agreement which was approved by this Court in a Memorandum Opinion and Order dated May 21, 1980 following a settlement hearing on March 21, 1980. The terms of the settlement, embodied in the form of a consent judgment entered on June 30, 1980, voided the December examination and required a new examination in compliance with the requirements of Title VII. The parties agreed to the appointment of a Special Master to review the design and development of the new examination, which was administered on May 22, 1982.

With regard to provisional appointments, paragraph 5 of the June 30, 1980 consent judgment provides as follows:

"5. Defendant OCA shall not terminate any provisional appointments to the UCO title without cause or, alternatively, without budgetary or other business reasons, until such time as the new selection procedure is developed and administered. This paragraph shall not be construed to require defendant OCA to terminate such provisional appointments in a manner other than that permitted under New York State law."

In a Memorandum Opinion and Order dated May 21, 1982, this Court interpreted this paragraph to mean, in part, "that provisional UCO's were not [to be] terminated because of their status as provisional UCO's. . . ." Slip op. at 3.

The settlement left open and certified to this Court the question of whether provisional UCOs who were hired prior to and during the pendency of the suit should be granted a preference in appointment upon passing the new UCO examination. Exercising the general equity powers of the Chancellor, I ruled in the May 21, 1980 opinion and order approving the settlement that those individuals serving as provisional UCOs as of that date would be granted a preference upon passing the new examination. I emphasized that "the preference here is a *limited one-time remedy* which leaves the merit system intact for future appointments and promotions," slip op. at 31 (emphasis added); it served the purpose of "retaining trained, qualified employees who have been performing successfully on the job for, in many cases, a number of years." *Id.* at 32. The Court of Appeals affirmed the grant of the preference as so limited, observing that this limited preference "does not undermine the merit-oriented philosophy of the New York Civil Service System." 641 F.2d 60, 62 (2d Cir.1980).

In a Memorandum Opinion and Order dated May 22, 1981 I denied a motion to intervene and amend the judgment which was brought by certain individuals who did not receive provisional appointments until after May 21, 1980. Declining to enlarge the preference to include these individuals, I reemphasized the significance of the limited nature of the preference and noted that the subsequently appointed provisionals had at least constructive knowledge of the May 21, 1980 decision and order. Slip op. at 2–3. I concluded that "[e]nlargement of the preferred pool in these circumstances would unjustifiably undermine the merit system." *Id.* at 3.

## SECTION 1443

██ 28 U.S.C. § 1443 permits removal of civil rights cases from state to federal

court in three situations. Section 1443(1) permits a defendant to remove when he is denied or cannot enforce in state court a right secured by a federal equal rights law. See *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). The first clause of Section 1443(2), the "color of authority" clause, permits a defendant to remove when sued for acting under color of authority derived from a federal equal rights law. Along with Section 1443(1), the color of authority clause is available only to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *Greenwood v. Peacock*, 384 U.S. 808, 824, 86 S.Ct. 1800, 1810, 16 L.Ed.2d 944 (1966). The second clause of Section 1443(2), the "refusal to act" clause, permits a defendant to remove when sued for refusing to act on the ground that so acting would be inconsistent with a federal equal rights law. The refusal to act clause is available "to state officers, and those acting with or for them including local and municipal officials." *White v. Wellington*, 627 F.2d 582, 585 (2d Cir.1980). Title VII qualifies as a federal equal rights law within the statutory definition of Section 1443. *White v. Wellington, supra*, 627 F.2d at 586.

## CASE LAW

While Section 1443 has been described as a "text of exquisite obscurity," [2] a review of the relevant case law makes clear its proper application in this case. Several cases have held that state officials carrying out court-ordered school desegregation plans are persons authorized to act for a federal officer within the meaning of Section 1443(2). The federal officer in such a situation is the court. Accordingly, when caught between conflicting requirements of federal court orders in desegregation suits and requirements of state law, school board members were permitted to remove state actions to federal district court. See *Burns v. Board of School Commissioners*, 302 F.Supp. 309

(S.D.Ind.1969), *aff'd*, 437 F.2d 1143 (7th Cir. 1971); *Bohlander v. Independent School District No. 1 of Tulsa Co., Oklahoma*, 420 F.2d 693, 694 (10th Cir.1969) (per curiam). In the *Burns* case, the Court expressly held that removal would be proper under both the "color of authority" and "refusal to act" clauses of the statute. 302 F.Supp. at 312. The *Bohlander* court failed to distinguish between the two clauses, observing only that:

> "The board undertook to carry out the directions of the federal court in an order which was authorized by federal civil rights statutes, and was an act under color of authority derived from a law conferring specific rights of racial equality."

420 F.2d at 694.

More recently, the school board of Buffalo, New York was permitted to remove a state suit filed by the Buffalo Teachers Federation to restrain the Board from acting contrary to state law in implementing an affirmative desegregation order at the direction of the federal court. The federal court had previously determined that the City of Buffalo and the School Board had discriminated against minority teachers in hiring and assignment practices. See *Arthur v. Nyquist*, 415 F.Supp. 904 (W.D.N.Y. 1976). It directed the defendant to design and implement an affirmative desegregation plan to remedy this discrimination. The Teachers Federation then brought suit in state court to restrain the Board from making certain probationary appointments which the Teachers Federation claimed would violate both state law and the collective bargaining agreement between the parties. The Board removed the state case to the federal court whereupon the Teachers Federation petitioned to remand. Denying this petition the Court explained:

> "Since the Board asserts that the actions for which they have been sued by the BTF ["Teachers Federation"] in state

**2.** Amsterdam, Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial, 113 U.Pa.L.Rev. 793, 843 (1965).

court were attempts to carry out the affirmative directions of this court's March 26, 1979 order, the board had the right to remove the action to federal court under the first clause of § 1443(2). The Court also concludes that removal was proper under the 'refusal to act' clause of § 1443(2). The Board contends that if they have failed to follow the requirements of state law, this was because the requirements were inconsistent with its obligations under this court's order and federal equal rights laws. The state defendant caught between the conflicting requirements of a federal order and state law can remove pursuant to this second clause."

*Buffalo Teachers Fed. v. Board of Education,* 477 F.Supp. 691 at 694.

Several cases arising in this Circuit have also discussed Section 1443 in the employment context. In *Bridgeport Education Association v. Zinner,* 415 F.Supp. 715 (D.Conn.1976), the local education association and several teachers sued the Bridgeport Board of Education and other officials alleging that certain appointments to positions within the school system on an "acting" basis violated the City Charter, civil service rules and the teachers' contract. District Judge Newman (as he then was) held that officials of a state or municipality, acting under color of state law, may invoke the "refusal to act" clause of Section 1443(2) when they have alleged a colorable claim that they are being sued for refusing to act pursuant to a facially neutral state law that would have a racially discriminatory result as applied. Since the defendants alleged a colorable claim that they refused to follow the civil service requirements on the ground that such action would be inconsistent with federal law, the statute was deemed satisfied and the motion to remand to state court was denied.

Judge Newman again addressed the application of Section 1443 removal in a case brought by unsuccessful applicants for the position of police officer in the Bridgeport Police Department. The suit, originally filed in state court against the Civil Service Commission, challenged the job examination solely on state law grounds. The state court defendants removed the suit to federal court, whereupon the plaintiffs moved to remand. Judge Newman granted the motion to remand, holding that removal could not be predicated on the "color of authority" clause of Section 1443(2). This was so because:

"Simply by endeavoring to comply with the obligations of federal statutory law, the state court defendants did not become federal officers nor did they acquire authorization to act with or for federal officers."

*Armeno v. Bridgeport Civil Service Commission,* 446 F.Supp. 553 at 556–57. The court emphasized that the federal injunction relied on by the defendants to remove the state case "did not authorize the defendants to act for this Court in affirmatively executing any duties. . . . Its command was negative only: to refrain from using discriminatory exams." 446 F.Supp. at 557. Judge Newman distinguished such an injunction from one which requires a more specific affirmative remedy:

"[I]n the context of employment exams, a federal court that finds a plaintiff's rights (whether grounded on the Fourteenth Amendment or Title VII) denied by a discriminatory exam provides a precise remedy for the plaintiff's grievance by requiring a new exam and insisting on prior court approval of it. If such an exam is approved, then state court interference with it, even for non-compliance with valid state law requirements, delays vindication of the federal plaintiff's right. In such circumstances it is entirely appropriate for the federal court to weigh the equities and determine whether under all the circumstances the need for a promptly implemented remedy (the new exam) outweighs the state's interest in compliance with its requirement."

*Id.* at 559.

The Court of Appeals for this Circuit addressed Section 1443 removal in a class action challenging the appointment and promotion of police officers in New Haven,

Connecticut. *White v. Wellington,* 627 F.2d 582 (2d Cir.1980). Expressly adopting Judge Newman's analysis in the *Zinner* case, the Court reversed the district court's remand because the defendants had satisfied the "refusal to act" clause of Section 1443(2) by alleging "a colorable claim that their conduct, if violative of state law, was justified by their federal statutory duty to avoid racial discrimination in hiring or promotion." 627 F.2d at 586. The Court emphasized that "the right to remove is statutory, jurisdictional and absolute, regardless of motivation, when it is found to exist." *Id.*

## DISCUSSION

These cases make clear that the crucial issue in civil rights removal is not, as plaintiffs would urge, the state law character of the proceeding, but the relationship between the proceeding and federal civil rights law. Here, the events underlying the state court proceeding arise directly out of this Court's specific affirmative remedy for the deprivation of the plaintiffs' civil rights found in the *Underwood* case. The plaintiffs in *Quirk* hold positions as provisionals because of the *Underwood* challenge to the UCO job examination. The *Underwood* consent judgment which was "so ordered" by this Court expressly prohibited the OCA from terminating provisional UCOs until the new examination was administered. The Memorandum Opinion and Order of this Court dated May 21, 1980 granted the limited preference only to those provisionals appointed up to that date, and the Memorandum Opinion and Order dated May 22, 1981 declined to extend that preference to include individuals, like the plaintiffs in *Quirk,* appointed thereafter. Simply put, but for the *Underwood* case and the orders of this Court resulting from it, there could be no suit in *Quirk.*

■ Defendants have satisfied the requirements of both clauses of Section 1443(2).[3] The actions at issue in *Quirk* were actions taken by the defendants while affirmatively executing duties imposed by this Court pursuant to federal civil rights law. As such, the defendants were authorized to act for a federal officer within the meaning of the "color of authority" clause. See *Buffalo Teachers Fed. v. Board of Ed.,* 477 F.Supp. 691, 693 (W.D.N.Y.1979); *Burns v. Board of School Commissioners, supra,* 302 F.Supp. at 312; *Armeno v. Bridgeport Civil Service Comm.,* 446 F.Supp. 553, 557 (D.Conn.1978). Defendants have also satisfied the requirements of the "refusal to act" clause by alleging that should the state court order them to grant the relief requested in *Quirk* they would face directly conflicting orders in state and federal court resulting in a double-edged sword of contempt. (State Defendants Brief at 9). Faced with this predicament, defendants have undoubtedly alleged "a colorable conflict between state and federal law" sufficient to invoke removal under the "refusal to act" clause. *White v. Wellington, supra,* 627 F.2d at 587; *Buffalo Teachers Fed. v. Board of Ed., supra,* 477 F.Supp. at 693; *Burns v. Board of School Comm., supra,* 302 F.Supp. at 312. The defendants are statutorily entitled to have this case adjudicated by the federal court.

Having determined that the state defendants were entitled to remove this action to this Court for resolution, I now turn to the merits of the underlying petition. While basing their claim solely on state law grounds, the plaintiffs here seek precisely the same relief previously denied in this Court's Memorandum Opinion and Order dated May 22, 1981. That opinion, along

---

**3.** Defendants premise their removal of this case on Section 1443(2). While analytically distinct, the two clauses of that section often merge when applied to a specific set of facts. Officials sued for following a federal civil rights statute can frequently allege that they are being sued for refusing to do an act inconsistent with that statute. See *Bridgeport Ed. Ass'n. v. Zinner, supra,* 415 F.Supp. at 719. The defend-

ants here, for example, argue both that their actions with regard to the provisional UCOs were required by orders of this Court issued to enforce rights arising from a federal civil rights statute, and that their refusal to either terminate or grant preferences to the plaintiffs was based upon the commands of this Court issued pursuant to that statute.

with·this Court's prior Opinion of May 21, 1980 and the Court of Appeals' affirmance of it, all stressed the importance of the limited nature of the preference granted. By limiting the preference to those provisional UCOs appointed before the May 21, 1980 Opinion, I endeavored to strike an equitable balance between the competing interests of the various parties, while safeguarding the minority plaintiffs' right to nondiscriminatory hiring procedures and the principle of merit selection established by the Constitution and laws of the State of New York. Slip op., May 21, 1980, at 29–33. I remain of the belief, expressed in my Opinion of May 22, 1981, that enlargement of the preferred pool would unjustifiably undermine the merit system. Enlargement of the preferred pool would also serve to decrease the number of appointments resulting from the new examination which was ordered by this Court and administered on May 22, 1982. Finally, provisionals appointed after the May 21, 1981 Opinion and Order had at least constructive knowledge of that decision when they accepted provisional appointment. Should some of these provisional employees receive permanent appointment they would, pursuant to the terms of the settlement, receive retroactive seniority and no loss in respect of leave credits or salaries. Slip op., May 21, 1980 at 22. For all of these reasons, I adhere to my previous decisions to limit the grant of the preference to provisional UCOs appointed as of May 21, 1980.

I need not determine whether compliance with the prior orders of this Court placed the state defendants in violation of New York State law.[4] As Judge Newman explained in the *Armeno* case, discussed *infra* at p. 1240, where the specific remedy for the federal plaintiffs' grievance is the subject of the removed state court proceeding, the federal court may "weigh the equities" and determine whether enforcement of federally guaranteed equal civil rights must take precedence

over compliance with state law requirements. 446 F.Supp. at 559. Having weighed the equities and having considered New York State's interest in its merit system in striking the required balance, I conclude that the relief requested must be denied.

CONCLUSION

The defendants have an absolute right to remove this case to federal court pursuant to 28 U.S.C. § 1443(2), the civil rights removal statute. Accordingly, plaintiffs' motion to remand is denied. Having declined to grant plaintiffs the relief they seek, I hereby direct the Clerk of the Court to dismiss plaintiffs' petition, with prejudice and without costs.

It is So Ordered.

---

**4.** I have observed, however, that "provisional appointments cannot ripen into permanent tenure, either de jure or de facto." Slip op., May 21, 1980, at 30, citing New York cases; slip op., May 22, 1981, at 3 fn. 1.