627 F.2d 582
 23 Fair Empl.Prac.Cas. 262,
23 Empl. Prac. Dec. P 31,056
William O. WHITE, New Haven Police Officer, Local 530 and
Connecticut Council
of Police Unions # 15 AFSCME AFL-CIO, Plaintiffs-Appellees,
Stephen W. Dunn, William L. White, Robert L. Lawlor, William
E. McCoy, Carl Hunter, Carol Marci, Mary A. Fish, Douglas P.
MacDonald, James K. O'Connell, Andrew Consiglio, John A.
Prokop, Santiago Malave, Intervening Plaintiffs-Appellees,
v.
Sheila WELLINGTON, Ronald Augustine, Joseph Herzyk, Thomas
Reyes, Vincent Farricella, Clarence Butcher, Joseph
Adelizzi, Robert Buckholz, Michael Laguna, Morris Trachten,
Frank Logue, Peter Feriola and The City of New Haven,
Defendants-Appellants.
 No. 911, Docket 79-7877.
 United States Court of Appeals,
Second Circuit.
 Argued March 25, 1980.
Decided July 2, 1980.
 
 1
 W. Paul Flynn, New Haven, Conn. (Gerald A. Heffernan, Kopkind, Flynn & Raccio, P. C., New Haven, Conn., of counsel), for plaintiffs-appellees.
 
 
 2
 Frank Cochran, New Haven, Conn. (Eugene N. Sosnoff and Sosnoff, Cooper, Whitney & Cochran, New Haven, Conn., of counsel), for intervening plaintiffs-appellees.
 
 
 3
 Charles G. Albom, New Haven, Conn. (Frederick W. Danforth, Jr., Corp. Counsel, Penn Rhodeen, Sp. Asst. Corp. Counsel, New Haven, Conn., and Paul L. Strauss, Law Student Intern, Yale Law School of counsel), for defendants-appellants.
 
 
 4
 Before KAUFMAN and MESKILL, Circuit Judges, and BRIEANT, District Judge.*
 
 BRIEANT, District Judge:
 
 5
 Defendants-Appellants, state officials of Connecticut,[1] appeal from an order remanding this action from the United States District Court for the District of Connecticut (Ellen Bree Burns, J.) to the Superior Court of the State of Connecticut at New Haven. Removal had been effected under the "refusal to act" clause of the Civil Rights removal statute, 28 U.S.C. § 1443(2), originally enacted in 1863 in aid of Reconstruction.[2] The remand was granted "without prejudice to defendants to renew their motion at a later date."
 
 
 6
 Because we believe appellants under the circumstances present here have an absolute right to remove the case, we reverse.
 
 
 7
 A brief summary of the facts will suffice. Plaintiff-Appellee White is a member of the Police Department of the City of New Haven, holding the rank of patrolman. Together with two employee organizations acting under state law as statutory representatives and bargaining agents for all New Haven police below the rank of Captain, he sues as class representative for all persons seeking promotion to the rank of sergeant in the New Haven Police Department. That position is within the classified civil service, ordinarily filled by competitive promotional examination, according to specific provisions of the city charter and civil service rules and regulations, all having the force of state law.
 
 
 8
 Plaintiffs allege that defendants have violated such state law, and threaten to continue to do so. They seek declaratory and injunctive relief to enforce such compliance against defendants, who administer the relevant state laws and procedures and will effect the promotion of sergeants and others in the Department. The Intervening Plaintiffs-Appellees are persons aspiring to be appointed who also contend that defendants violated state law in their administration of the promotional examination and procedures.
 
 
 9
 Although no answer or responsive pleading had been filed in the state court, the position of appellants was disclosed to the district court in their timely petition for removal. Pleading conditionally in their amended petition for removal, they alleged that in conducting an examination for the position of Sergeant-Police Department, they had refused to do certain acts:[3]
 
 
 10
 "on the grounds that it would be inconsistent with Title VII of the Civil Rights Act of 1964, as amended, Title 42 United States Code, Section 2000e et seq., Title 42 United States Code Section 3766(c) (Law Enforcement Assistance Administration) and Title 31, United States Code, Section 1242 (Office of Revenue Sharing, U.S. Department of the Treasury), as well as Title 42, United States Code, Sections 1981 and 1983."
 
 
 11
 The "refusal to act" clause of 28 U.S.C. § 1443(2) has seldom been invoked. As then District Judge Newman to this Court pointed out in his exhaustive and scholarly review of the subject, in Bridgeport Education Association v. Zinner, 415 F.Supp. 715 (D.Conn. 1976), the legislative history limits those able to remove thereunder to state officers, and those acting with or for them including local and municipal officials.[4] These ordinarily will prefer to litigate in the state court. The situation here is unusual because the hiring practices of the New Haven Police Department have been under attack since about 1974 for claimed civil rights violations and there is pending in the District Court of Connecticut litigation involving the same or similar claims, the resolution of which may moot or control the instant case.[5] Appellants alleged in their removal petition that they believed that the claims alleged in the instant case could "best be resolved" by removal and consolidation with the pending federal civil rights litigation affecting the hiring and promotional practices of the same police department. Whether this is really so, or whether removal will merely result in delay and complications for both lawsuits is beside the point as the right to remove is statutory, jurisdictional and absolute, regardless of motivation, when it is found to exist.
 
 
 12
 Appellants are within the class of persons entitled to invoke the removal statute. We adopt generally the analysis of Bridgeport Ed. Ass'n. v. Zinner, supra, 415 F.Supp. at 722, which holds that the statute may be invoked when the removing defendants make a colorable claim that they are being sued for not acting "pursuant to a state law which, though facially neutral, would produce or perpetuate a racially discriminatory result as applied." See also, Buffalo Teachers Association v. Board of Education, 477 F.Supp. 691, 693-94 (W.D.N.Y. 1979). Clearly Title VII of the Civil Rights Act of 1964, relied upon in the petition to remove, qualifies under the statutory definition of § 1443.
 
 
 13
 The district court in its analysis of this case made no finding that the contention that state law, as applied, violates Title VII, was not a colorable claim. Nor could it do so, because the identical contention remains unresolved in companion litigation presently pending in the district.[6] Rather, it remanded on what may be characterized as a narrow point of pleading, holding that defendants':
 
 
 14
 "position is analogous to alternative pleading in that they argue the 1979 (Civil Service) examination did not violate local law, but, even if it did violate such law, enforcement thereof would be inconsistent with federal equal civil rights legislation. The court agrees with the plaintiffs that such a stance falls outside the purview of § 1443(2)."
 
 The district court also held that:
 
 15
 "Implicit in a § 1443 removal is the belief in a conflict, however subtle or colorable, between state/local law and federal law. The state officers should at least be in a position to allege a definite inconsistency between their state law obligation and controlling federal law."
 
 
 16
 While their case would be aided had they submitted their proposed answer to the complaint, we believe that appellants in their petition for removal do show a colorable claim that their conduct, if violative of state law, was justified by their federal statutory duty to avoid racial discrimination in hiring or promotion. The dissenting opinion in this case does not assert that there is no colorable claim alleged of conflict between state and federal law. We agree fully with Judge Meskill's description of the "jurisdictional touchstone" as "a colorable conflict between state and federal law" leading to the removing defendant's refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law. That good faith belief is tested objectively, in that the claim to that effect of the removing defendant must be "colorable." In effect, it is much the same claim being litigated in the long pending Silver Shields case. A strong presumption of regularity in their compliance with local civil service rules attaches to the acts of municipal officials in appointing and promoting police. This is so because unions and job aspirants have standing to insist on compliance. If, as is likely, during past years, New Haven has been in compliance with state law in regard thereto, and if, as the EEOC has found, there is reasonable cause to believe that there has been invidious racial discrimination in past police civil service appointments in that City, then the inference follows that the obligations imposed by federal civil rights legislation conflict with state civil service legislation. If so, the issues in this case are truly colorable and removal of this action is justified by the facts. As was held in Bridgeport Ed. Ass'n. v. Zinner, supra, 415 F.Supp. at 722:
 
 
 17
 "Several considerations persuade me to read no limitation into the nature of the inconsistency that the removing defendants must allege. First, the language of the 'refusal' clause is clear on this point. It requires only that the defendants' refusal to act was 'on the ground' that acting would be inconsistent with federal law. The statute creates no stringent standard as to the nature of the inconsistency. It establishes a subjective test, to be met by evidence of what in fact was the reason for the defendants' failure to act. To decide at this point whether the local civil service requirements are really inconsistent with Title VII or § 1981 in the circumstances of this case would be to make entitlement to removal depend on whether the defendants will prevail on the merits of their claim. The removing defendants have alleged at least a colorable claim that their refusal to act was on the ground that following the civil service requirements would be inconsistent with federal law. . . . That satisfies the terms of the statute."
 
 
 18
 We see no reason why a removal petition cannot contain inconsistent allegations in the nature, here, of the traditional plea of confession and avoidance without the confession. In effect defendants wish to plead a general denial, that they violated or propose to violate state law, together with the affirmative defense, that if they did so, their refusal to obey state law was justified by their duty to refrain from violating federal civil rights laws. The petition to remove is analogous to a pleading. In federal courts, pursuant to Rule 8(e)(2), F.R.Civ.P., alternative, inconsistent claims and defenses may be alleged in a pleading. The modern rules of notice pleading "apply with as much vigor to petitions for removal as they do to other pleadings, which, according to Rule 8(f), F.R.Civ.P. " 'shall be so construed as to do substantial justice'. " Rachel v. Georgia, 342 F.2d 336, 340 (5th Cir. 1965), aff'd 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966).
 
 
 19
 In Willingham v. Morgan, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), a removal situation arising under the analogous provisions of § 1442(a)(1), federal prison officials were sued in state court for alleged torts committed against a prisoner. The Supreme Court, citing Maryland v. Soper (No. 1), 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926), held (395 U.S. p. 408, 89 S.Ct. p. 1817) that "the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses." Logic, and the purpose of the removal statute dictate the same result here. Appellants need not admit that they have violated or intend to violate the state civil service laws, in reliance on Title VII, before they may remove this action. It is sufficient that the second amended complaint, read together with the amended removal petition, shows, as we find that it does, a colorable claim of inconsistent state/federal requirements.
 
 
 20
 While we reverse today for the foregoing reasons, we express no view as to what procedures may or should be followed on remand to the district court. It may be that this action should be consolidated with the prior related litigation, or that it should be stayed pending the outcome of that case, with leave to any party not before the court in that case, to apply for leave to intervene therein. The advisability or practicality of any such procedures will rest entirely within the sound discretion of the district court. Although we regard the right of removal here as regulated by statute, we note that were the order of remand to be held proper, if the state claims were tried in state court, the affirmative defenses based on federal statutes would probably have to be pleaded and tried at the same time likely resulting in a bar, by reason of collateral estoppel or res judicata, to any subsequent proceedings in the district court arising out of the same controversy. Removal of this case "at a later date" when the state court will have adjudicated all of the controversy would be of little benefit to appellants. See, Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961); Abramson v. Pennwood Investment Corp., 392 F.2d 759, 762 (2d Cir. 1968); Quinn v. Aetna Life & Cas. Co., 616 F.2d 38 (2d Cir. 1980).[7]
 
 
 21
 In order that this and related litigation shall not be delayed unduly, the mandate shall issue forthwith.
 
 IRVING R. KAUFMAN, Circuit Judge (concurring):
 
 22
 Although I concur in Judge Brieant's opinion for the court, in light of Judge Meskill's dissent, I believe a few words are necessary to clarify the basis for our holding.
 
 
 23
 On October 16, 1979, William White, a New Haven policeman, and his union filed this action in Connecticut Superior Court against the City of New Haven and several of its officials seeking a declaratory judgment that the examination procedures it employed for promotion of patrolmen to the rank of sergeant violated the City Charter and Civil Service Rules. According to the amended complaint, local law requires that promotions be based on a rank ordering that combines scores on both physical and written examinations, and, until recently, the City's system conformed with this law. Under that system, however, very few Blacks won promotions, while under the revised procedure, a larger number of Blacks qualified.
 
 
 24
 On November 27, the City and its officials petitioned for removal of the action to the district court under 28 U.S.C. § 1443(2), alleging they refused to return to the abandoned formula on the ground that to do so would violate Title VII, 42 U.S.C. § 2000e, the Law Enforcement Administration Act, 42 U.S.C. § 3766(c), the requirements of federal revenue sharing, 31 U.S.C. § 1242, and 42 U.S.C. §§ 1981 and 1983.
 
 
 25
 Judge Burns, however, remanded the case to state court on appellees' motion. She recognized that § 1443(2) permits state officials to remove to federal court actions against them for refusing to act, where their refusal is based upon the command of a federal statute protecting civil rights. Nevertheless, she held that since appellants refused to admit that their actions violated local law, they had no right to remove absent a state court determination of such a violation. The case was therefore remanded without prejudice to removal at a later date.
 
 
 26
 The civil rights removal statute, 28 U.S.C. § 1443(2), confers the right of removal upon state officials sued in state court "for refusing to do any act on the ground that it would be inconsistent with" a federal law providing for equal rights. Judge Meskill would have us read into the statute a requirement that removing defendants admit they have flouted state law before they may look to a federal court for adjudication of their claimed duties under federal law. Such a strained interpretation would unnecessarily restrict the statute's intended scope, and would place an undue burden upon the conscientious state officials whom § 1443(2) is designed to protect.
 
 
 27
 It is significant that at a conference in Judge Burns's chambers, the appellants stated that, if they were to administer the examination as they had in the past and as appellees were demanding, they would violate federal law. They contended, moreover, that the new procedure they intended to follow was authorized both by state and federal law. Judge Meskill finds this position troublesome and questions its sincerity and plausibility, specifically doubting whether appellants were in fact motivated by respect for federal civil rights law. This assumption of insincerity is not solidly grounded. Indeed, it would only have some basis if appellants claimed that state law required the course of action they were then following and no other. In such an instance, state law would constitute a sufficient explanation for their behavior, and other motivations would be irrelevant.
 
 
 28
 But these facts are not present here. Appellants' position, as I comprehend it, is that state law permits both the new and old systems. The appellants can, therefore, plausibly answer the relevant question under § 1443(2) ("Why did you refuse to act as plaintiffs would have you do?") by citing their concern for the federal mandate.[1] The alternative query posed by Judge Meskill ("Why did you choose to violate state law?") presupposes that the old system in fact contravened state requirements. In my view, removal should not be conditioned upon such an admission of wrongdoing, nor should it require renunciation of alternative defenses to plaintiff's claims. My dissenting colleague would exact too high a price for exercising the right of removal.
 
 
 29
 The removal statute in this instance introduces the requirement of a conflict between state and federal law only through its reference to a suit against a state official for refusing to act. Since such an action will necessarily charge a violation of a duty under state law, it is totally sufficient for the removing defendant merely to state that his refusal to act as plaintiff demands is grounded upon a federal law providing for equal rights. The statute does not require that he admit his violation of state law nor is it relevant to his right to remove. The element of conflict between state and federal law which is a prerequisite for removal is supplied in this instance by the appellees' averments taken in conjunction with those of appellants.
 
 
 30
 The procedure advanced by my dissenting brother would shift the focus of the court's attention from "the subjective . . . reason for the defendants' failure to act," Bridgeport Education Association v. Zinner, 415 F.Supp. 715, 722 (D.Conn.1976), to whether a federal-state conflict in reality existed. This issue, however, goes to the merits, and should not be erected as a jurisdictional barrier, barring defendants at the threshold of the federal court.
 
 
 31
 The sparse legislative history of § 1443(2) makes its purpose clear: "to enable State officers, who shall refuse to enforce State laws discriminating in reference to (the rights created by § 1 of the 1866 Civil Rights Act) on account of race or color, to remove their cases to the United States courts when prosecuting for refusing to enforce those laws." Cong. Globe, 39th Cong., 1st Sess. 13676 (1863) (remarks of Rep. Wilson), quoted in Zinner, supra, 415 F.Supp. at 718. The scope of the statute has since been broadened to include defenses based upon any federal law providing for equal rights, but its basic purpose remains: to open a federal forum to state officials in the position of appellants. I cannot subscribe to the view that this statute was intended to exact from its beneficiaries a confession that the claim against them was valid as a matter of state law before they could avail themselves of its protection and their right to a federal forum.
 
 
 32
 Our holding today will not trigger a stampede of litigants, further burdening the federal courts. The sparse case law under the removal clause of § 1443(2) testifies to the extreme rarity of this situation. As the majority opinion points out, it is realistic to suppose that state officials sued for alleged derelictions of duty will normally prefer a state forum's adjudication of the controversy. When state officials exercise the extraordinary right of seeking removal, it would seem to be a significant indication that they are foregoing their accustomed forum because the federal issue they seek to litigate is so substantial. Accordingly, I agree with Judge Brieant that the judgment of the district court should be reversed.
 
 MESKILL, Circuit Judge, dissenting:
 
 33
 I respectfully dissent.
 
 
 34
 Like the majority I can see no reason why removed proceedings should not be governed by the principles of pleading embodied in the Federal Rules of Civil Procedure. Indeed, Rule 81(c) settles the question, rendering unnecessary judicial inquiry into the appropriateness of such an approach. Therefore I agree with today's decision insofar as it reaffirms that in a proceeding properly removed to federal court a party may plead inconsistent claims or defenses to the extent permitted by Rules 8 and 11. Where I part ways with the majority is in answering the more difficult question lurking within the pleading question. That is, how are we to determine when in fact a proceeding has been properly removed.
 
 
 35
 The propriety of removal is a jurisdictional issue governed exclusively by the applicable removal statutes. While principles of pleading may prescribe how and when federal jurisdiction is to be invoked they cannot, of course, constrict or enlarge the scope of that jurisdiction. See generally F & L Drug Co. v. American Central Insurance Co., 200 F.Supp. 718 (D.Conn.1961). This distinction is implicitly recognized in the Federal Rules themselves. In the more common situation, where the plaintiff initiates the federal proceedings, the rules require that the complaint set forth a "plain statement of the grounds upon which the court's jurisdiction depends . . . ." Fed.R.Civ.P. 8(a). In the removal situation, the defendant bears the burden of demonstrating entitlement to have the controversy heard in federal court. Nothing in the rules indicates that in either case the required jurisdictional statement, like a statement of claims or defenses, may contain contradictory factual averments. As I understand the relationship between pleading and jurisdiction, the party invoking federal jurisdiction may plead himself out of court by averring facts which, if true, would foreclose the exercise of that jurisdiction.
 
 
 36
 Looking at the issue as one of statutory entitlement to remove a case from state court rather than as a question of pleading, although I think the question is close I am persuaded that the district judge did not err in remanding the case to the state court whence it came. There is little caselaw and even less legislative history illuminating the rarely-invoked "refusal to act" clause of § 1443(2). In Bridgeport Education Association v. Zinner, 415 F.Supp. 715 (D.Conn.1976), Judge (then District Judge) Newman analyzed the sparse materials available in addressing the several issues of statutory interpretation presented by the removal dispute in that case. He determined: (1) that officials of a state or municipality, acting under color of state law, may invoke the "refusal to act" clause, (2) that the "refusal to act" clause permits removal when defendants make a colorable claim that they are being sued for refusing to act pursuant to a facially neutral state law that would have a racially discriminatory result if enforced, (3) that the federal law relied on by the removing defendants must be one providing for equal civil rights, and (4) that the conflict alleged to exist between the commands of state and federal law need not be apparent on the face of the statutes. But see Dodd v. Rue, 478 F.Supp. 975 (S.D.Ohio 1979). Because the Zinner defendants averred in their removal petition that they had refused to act in accordance with state law the tricky issue presented by the instant case was not considered. Nevertheless, the approach of the Zinner court provides a useful background for decision of this case.[1]
 
 
 37
 Zinner read the "refusal to act" clause as establishing "a subjective test, to be met by evidence of what in fact was the reason for the defendants' failure to act." Id. at 722. See also Armeno v. Bridgeport Civil Service Commission, 446 F.Supp. 553, 557 (D.Conn.1978) ("The 'refusal to act' clause of § 1443(2) adequately assures a right of removal to . . . a public employer . . . when he has declined to observe state requirements that he believes are inconsistent with the obligations imposed upon him by a federal law protecting equal rights.") Where, as here, defendants claim that they have not violated any state or local law, it is difficult for me to understand how they can simultaneously claim to have disregarded that law in the good faith belief that they were required to do so by a conflicting federal law. If defendants believe themselves to be in compliance with the requirements of state and local law, they hardly need to invoke federal law as justification for refusing to act differently.
 
 
 38
 Defendants' denial of a state or local law violation not only renders questionable their claim that any refusal was based on deference to the requirements of federal law, it significantly alters the focus of the impending trial. As Judge Burns pointed out below, defendants' posture necessitates a determination whether a state or local law has been violated and thus requires judicial construction of New Haven's city charter and the various civil service rules and regulations applicable to its police department "a function which is better performed by the state than the federal judiciary." Memorandum of Decision at 5. Cf. Chance v. Board of Examiners, 561 F.2d 1079, 1088-92 (2d Cir. 1977).
 
 
 39
 Refusing to permit removal is therefore not a punishment for defendants' refusal to confess their state or local law transgressions. It is merely a recognition that the removal statute most likely was intended to encompass only those situations in which the requirements of the federal civil rights law invoked need elucidation. In the instant case that question cannot be reached until the requirements of Connecticut law have been clarified. The Supreme Court has demonstrated a disposition, even in civil rights cases, to interpret statutory removal provisions quite narrowly in order to avoid unnecessary dislocation of the historical relationship between the state and federal courts in matters of particular state concern. Cf. Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). For this reason I view it as wiser not to stretch § 1443(2) to include cases where defendants claim only that they have refused to act pursuant to plaintiffs' erroneous perceptions of the requirements of state law. Such a dispute may well be settled without any reference to federal law, and the plaintiff should not be needlessly deprived of the opportunity to litigate his state law issues in state court.
 
 
 40
 The majority correctly states that a federal defendant seeking removal under a different removal statute, § 1442(a)(1), need not admit commission of the act alleged by the plaintiff. Willingham v. Morgan, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Since the federal government can only act through its officers, Justice Marshall explained in Willingham, § 1442(a)(1) removal is necessary to ensure that the federal government retains control over its own operations. Id. at 406, 89 S.Ct. at 1815. Whether the federal official committed the offense alleged is irrelevant to the potential for disruption of federal business, and therefore the right to remove is contingent only on whether the defendant is a federal officer acting within the scope of his authority. That is, under § 1442(a)(1), the status of the defendant is the jurisdictional touchstone. Nothing in Willingham suggests that a removing defendant might state conditionally in his petition that he is not a federal officer acting within the scope of his authority. Under § 1443(2), the jurisdictional touchstone is a colorable conflict between state and federal law leading to the removing defendant's refusal to follow state law because of a good faith belief that to do so would violate federal law. By averring that they are not caught in such a predicament, defendants have demonstrated that they are not entitled to the exceptional protection afforded those who are. Contra, Buffalo Teachers Federation v. Board of Education, 477 F.Supp. 691 (W.D.N.Y.1979).
 
 
 41
 Remand is particularly appropriate in this case in light of defendants' failure to assert any possible conflict between federal law and state law (even as interpreted by plaintiffs) as to a number of the violations alleged in the complaint. In their amended removal petition, defendants specified those acts that they had refused to perform on the ground of inconsistency with federal law:
 
 
 42
 a. To "assign weights" to the scores achieved by applicants on each phase of the examination in order to determine the overall score achieved by each candidate;
 
 
 43
 b. To use the written portion as other than a pass-fail component;
 
 
 44
 c. To use the performance evaluation as other than a pass-fail component; and
 
 
 45
 d. To conduct the oral examination in any manner other than that in which it was conducted.[2]
 
 
 46
 Plaintiffs and intervening plaintiffs, however, have alleged that defendants violated local law in ways not addressed by defendants. They charge, for example:
 
 
 47
 The Civil Service Board did not determine the tests that comprised said examination.
 
 
 48
 The examination was not conducted under the general direction of the Civil Service Board and by qualified examiners as determined by said Board.
 
 
 49
 On information and belief, the procedure utilized in the said promotional examination was a new procedure adopted by the said Civil Service Board without prior public hearing and notice as required for any change in the rules by Section 190 of the Charter and Rule III of the Rules of the Civil Service Board.
 
 
 50
 As the district court noted, if violations are proven it may well be necessary to invalidate the examination on these grounds alone, in which case the question of any possible federal defense will be moot. The Connecticut Supreme Court has held that "(s)tatutory provisions regulating appointments under civil service acts are mandatory and must be complied with strictly. They may not be waived by a civil service commission and substantial compliance is insufficient." Walker v. Jankura, 162 Conn. 482, 489, 294 A.2d 536, 540 (1972) (vacating promotion list based on examination held in violation of applicable rules). Simply because federal law prohibits the use of discriminatory employment examinations is a wholly insufficient reason to litigate only in a federal court such questions as whether the Civil Service Board performed its duty to oversee the examination process. Cf. Armeno, supra, 446 F.Supp. at 558.
 
 
 51
 While there is some reason then to interpret the statute narrowly so as to exclude removal petitions which deny any refusal to act in accordance with state or local law, I can see no compelling reasons to justify a broader interpretation. "The presence of a federal defense does not normally create federal question jurisdiction . . . ." Zinner, supra, 415 F.Supp. at 723 n. 7, citing Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In areas of concurrent federal-state jurisdiction vindication of a defendant's federal rights is generally left to the state court properly selected by the plaintiff except in those rare instances where Congress has determined that the federal interest in having the case tried in federal court outweighs the plaintiff's traditional interest in selecting the forum. Cf. Greenwood v. Peacock, supra, 384 U.S. at 828, 86 S.Ct. at 1812. "Where Congress has seen fit to grant concurrent jurisdiction to the state courts, they are competent to dispose of questions involving federal law." Victorias Milling Co. v. Hugo Neu Corporation, 196 F.Supp. 64, 70 (S.D.N.Y.1961).
 
 
 52
 Given the majority's disposition of the remand issue, it is unnecessary for us to speculate as to whether, had the case been remanded to state court, it would have been possible for defendants to preserve the federal issue while litigating the state issue. I note only that I would not assume, as does the majority, that such an option would be unavailable. Cf. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (discussion of preservation of federal issue during litigation in state court).
 
 
 53
 I would affirm.
 
 
 
 *
 Of the Southern District of New York sitting by designation
 
 
 [1]
 Defendant City of New Haven is a municipal corporation. The other defendants, and their responsibilities at the time the action was filed, are:
 Sheila Wellington was President and Ronald Augustine, Joseph Herzyk, Thomas Reyes and Vincent Farricella were members of the Civil Service Board of the City;
 Clarence Butcher was President and Joseph Adelizzi, Robert Buckholz, Michael Laguna and Morris Trachten were members of the Board of Police Commissioners of the City;
 Frank Logue was the Mayor of New Haven; and
 Peter Ferriola was the Director of Personnel for the City.
 
 
 [2]
 That statute now provides in relevant part:
 " § 1443. Civil rights cases
 Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending.
 (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." (Emphasis added).
 
 
 [3]
 According to the second amended complaint, New Haven Civil Service regulations having the force of state law contemplate that promotions to sergeant in the police department shall be made pursuant to competitive examinations consisting of one or more of the following: written tests, oral tests, performance tests, mental aptitude tests and physical tests of fitness and agility. Such of these tests as the Board may order are to be treated as a single examination and graded on a scale of one hundred points. Promotions are required to be made pursuant to the traditional "one out of three" rule, from those standing highest on the list who shall have passed with a score not lower than seventy. On March 18, 1977 the U. S. Equal Employment Opportunity Commission ("EEOC") found probable cause to believe that the promotional practices of New Haven, conducted pursuant to the same regulations in 1974, had resulted in discrimination against black persons because of their race in violation of § 703(a) of Title VII of the Civil Rights Act of 1964. That issue remains sub judice. See note 5, infra. The complaint in this case alleges that the defendants now intend to deviate from prior practice by (1) "assigning weights" to the scores achieved by applicants on separate phrases; (2) treating certain parts of the examination as "pass-fail" components, with failure of any single phase resulting in elimination; (3) not grading on a scale of 100 points, eliminating the passing requirement of 70 points; and (4) not appointing among those having the highest scores
 
 
 [4]
 This statute by its terms would appear to include federal officers within those who may remove. Cf. Greenwood v. Peacock, 384 U.S. 808, 824, 86 S.Ct. 1800, 1810, 16 L.Ed.2d 944 (1966) (Dictum). Such defendants however now have a right of removal greater in scope under 28 U.S.C. § 1442
 
 
 [5]
 Pending resolution of this appeal, Judge Burns stayed the remand of the instant case. The related case, New Haven County Silver Shields Inc. et al. v. The New Haven Department of Police Services et al., Civil Action N-77-329, is also assigned to Judge Burns. Plaintiffs in the Silver Shields case characterize their action as "charging past and present discrimination, based on race or other minority status, in recruitment, hiring, promotions, seniority, assignments and discipline in the New Haven Police Department." Injunctive relief is sought, inter alia, regulating any "examination or other selection device in conjunction with hiring and promotion in the . . . police department." Since this appeal was heard, plaintiffs in this case and four of the twelve intervening plaintiffs have been granted leave by Judge Burns to intervene as parties in the Silver Shields case
 
 
 [6]
 The Silver Shields case. See note 5, supra
 
 
 [7]
 The case of England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), cited in the dissenting opinion, is distinguishable. In England, federal subject matter jurisdiction was clear, but the district court abstained to permit concurrent state court litigation of state law issues. Thereafter, the state court purported to decide the federal constitutional issue. Here, the dissent's position is that the defendants have not established their right to remove, and, thereby their right to litigate in federal court. That right was clearly established in the England case. See 375 U.S. at 422 n. 13, 84 S.Ct. at 468, n. 13
 Similarly, the case of Chance v. Board of Examiners, 561 F.2d 1079 (2d Cir. 1977), relied on in the dissent, fails to compel a deferral to state court jurisdiction here. Initially, it should be reemphasized that in our case, a statute permits the removal sought. Secondly, the Chance court deferred to the state only after a federal court had already ruled on the question by issuing a preliminary injunction. Chance was concerned with inadvisability of continuing federal court supervision of a new system adopted in response to that injunction. This Court noted that:
 "In directing the District Court to relinquish jurisdiction over permanent prospective relief, we emphasize that the Examiners have agreed not to revert to the original examination system, that they are judicially estopped from doing so, and that each of the plans under consideration is on its face, federally constitutional if properly implemented." Id. at 1092.
 Translated to the facts of our case, if the district court finds that federal law has been violated, the state is then free to institute a new procedure consistent with the Court's findings. The state has not done that here. Nothing in Chance suggests that at this stage in the litigation the federal court must defer to the state. At some future time, the district court in this case could stay the action pending state reforms, or could remand part of the issues in its discretion under 28 U.S.C. § 1441(c).
 
 
 [1]
 Indeed, serious questions as to the propriety of the testing procedure formerly employed were brought to appellants' attention in New Haven County Silver Shields Inc. v. The New Haven Department of Police Services, Civ. N-77-329, which is now pending before Judge Burns. Plaintiffs in that action charge, inter alia, racial discrimination in promotions within the New Haven Police Department, and tender a specific challenge to the old testing procedure
 
 
 [1]
 Inasmuch as defendants have failed to demonstrate entitlement to remove even under the broad interpretation given to § 1443(2) in Zinner, I express no opinion on the precise holdings of that decision a decision which the majority adopts today
 
 
 [2]
 Because in my view by taking the position that they have fully complied with state and local law defendants have failed to demonstrate entitlement to remove, it is unnecessary to examine their fall-back claim, that is, that if interpreted as plaintiffs suggest state law would conflict with Title VII. I question however the colorability of defendants' claim of conflict. Although plaintiffs have attacked the conduct of the oral examination in several particulars alleging for example that the questions were not uniform, the panel was not impartial, the scoring was not proper, and the content was not objective defendants reply only that to have conducted the oral examination in any other manner would have violated federal law. Title VII requires only that employment examinations be non-discriminatory. The suggestion that there is only one non-discriminatory manner in which to conduct a non-discriminatory oral examination is inherently improbable
 Like all other employers, cities must obey the commands of both state and federal law; they are excused from compliance with state or local law only when such compliance would necessarily conflict with the requirements of federal law. Cf. United States v. City of Chicago, 549 F.2d 415, 438 (7th Cir.), cert. denied, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). The fact that their previous practices may have met the requirements of state law while violating federal law does not mean that in the future the former may be disregarded. Their duty is to develop a system that meets the requirements of both if such a result is possible. See generally Chance v. Board of Examiners, 561 F.2d 1079 (2d Cir. 1977).