Annette **SEXSON,** Wayne Watson, and Common Cause, Inc., Plaintiffs,

v.

Beurt R. **SERVAAS,** in his official capacity as the President of the Marion County City–County Council; William H. Hudnut, in his official capacity as Mayor of the City of Indianapolis; the Marion County City–County Council, and the Marion County Election Board, Defendants.

No. IP 91 451 C.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 9, 1994.

Stephen Laudig, Laudig & George, Kevin McShane, McShane & Inman, Marilyn A. Moores, Cohen & Malad, Indianapolis, for plaintiffs.

Wayne C. Ponader, Jeffrey S. Koehlinger, Bose McKinney & Evans, Indianapolis, for defendants.

## ENTRY

BARKER, Chief Judge.

In March of last year, the United States Supreme Court decided the case of *Voinovich v. Quilter*, —— U.S. ——, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993). For the reasons set out in this entry, that ruling makes it impossible for this Court to continue to exercise jurisdiction over the state-law claims in this suit. Accordingly, this cause must be dismissed without prejudice and remanded to state court.

Plaintiffs instituted this action in Marion County Superior Court on April 26, 1991, a day after this Court denied a request for a preliminary injunction in *Baird v. Consolidated City of Indianapolis*, (IP 87–111–C). Their complaint set forth a single claim: that the Marion County City–County Council (the "Council") failed to redistrict Marion County in accordance with Ind.Code 36–3–4–3(a) when it established new legislative boundaries for the Council in 1991. The Plaintiffs explained:

> General Ordinance No. 36, 1991, enacted by Defendant Council on March 25, 1991, and signed into law by Defendant Hudnut, violates two (2) of the redistricting requirements set forth in I.C. 36–3–4–3(a), to wit; they are not compact, and do not contain, as nearly as possible, equal population; the Court *en banc* must therefore declare said ordinance null, void, and invalid.

Plaintiffs' Complaint, ¶ 13. The Defendants responded by removing this matter to federal court pursuant to 28 U.S.C. § 1443(2), which is commonly known as the "refusal clause". It provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> . . . .
>
> (2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*

28 U.S.C. § 1443(2) (emphasis added). The language of the "refusal clause" is non-discretionary; once the defendant opts to remove a case, the court is not at liberty to decline jurisdiction provided that the requirements of 28 U.S.C. § 1443(2) are satisfied. The Defendants met that burden; in their Answer they set forth the following affirmative defense:

> [T]he Defendants allege and state that the districting obligations imposed by I.C. 36–3–4–3(a) directly conflict with Defendants' obligations under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and that Plaintiffs' claims under I.C. 36–3–4–3(a) are therefore specifically preempted by the requirements of federal law.

Answer, at 5. In its Entry on May 3, 1991, the Court upheld the Defendants' removal of this cause to federal court because " '[t]he removing defendants have alleged at least a colorable claim that their refusal to act was on the ground that ... [it] would be inconsistent with federal law.' " Court's Entry of 5/3/91, at 5, *citing, Bridgeport Educ. Ass'n v. Zinner*, 415 F.Supp 715, 722–23 (D.Conn. 1976); *see also White v. Wellington*, 627 F.2d 582, 586 (2nd Cir.1980). The Court made this determination based on the Defendants' argument that Section 2 of the Voting Rights Act prevented their making the districts more compact or more equal in population. *See* Defendants' Memorandum in Opposition to Motion to Remand, at 8.

After agreeing to proceed on a submitted record, the parties filed their trial briefs with the Court. Much to the Court's surprise, the Defendants devoted only one page of their trial brief to arguments regarding their Section 2 affirmative defense. The Defendants apparently believed that the Court, as well as the Seventh Circuit Court of Appeals and the United States Supreme Court, had already decided that Section 2 *required* the creation of the seven, 60 percent African–American, majority districts in dispute. *See* Defendants' Trial Brief, at 4. These circumstances prompted the Court to issue an order directing the Defendants "to advise the Court whether Section 2 of the Voting Rights Act requires the City–County Council to draw the district lines as they are presently formed, especially the aforementioned seven, 60 percent African–American, majority districts, without any variation on those boundaries being possible." Order of November 5, 1993, at 4. The Court explicated the plain meaning of the Defendants' affirmative defense as follows:

that Section 2 left the City–County Council no other choice but to draw the boundaries as they are presently drawn, a defense which the Defendants bear the burden of proving. They seem to believe, however, that *Baird v. Consolidated City of Indianapolis*, 976 F.2d 357 (7th Cir.1992) has already resolved the issue whether Section 2 *requires* the creation of the seven, 60 percent African–American, majority districts at issue:

[T]he wisdom and *necessity* of creating these seven, 60% African–American, majority districts has [sic] already been recognized by this Court, *see Baird*, October 23, 1991 Entry at 1, 11, and affirmed by both the Seventh Circuit, *see id.*, 976 F.2d 357 (7th Cir.1992) and the United States Supreme Court, *see id.*, [—— U.S. ——, 113 S.Ct. 2334, 124 L.Ed.2d 246], 1993 WL 58712, in *Baird*, which rulings are now the law of this Circuit. (emphasis added).

Defendants' Trial Brief, at 4–5. Contrary to the Defendants' contention, this Court does not view it to be a fair reading of its decision in *Baird* that Section 2 *requires* the creation of seven 60 percent African–American districts or any other specific configuration. Nor can the Court identify any language in the Seventh Circuit's decision which leads to that conclusion. And for good reason: the issue was never squarely before the Court. The Court of Appeals acknowledged this fact when it noted that the Plaintiffs conceded that the seven districts comply with the Voting Rights Act. *See Baird*, 976 F.2d at 357. It does not follow, however, that a redistricting plan that complies with the Voting Rights Act is necessarily required by it. Would it be impossible for the districts in question to contain less than sixty percent African–American representation and still pass muster under the Act? The Court has no way of knowing based on the record before it because the merits of the Defendants' third affirmative defense have not been argued. The Defendants devote only three sentences to "Section 2 Concerns" in their trial brief. Defendants' Trial Brief, at 4–5. Although the Defendants' Reply Brief touches on the issue, much of that discussion centers on what the Court views to be an inaccurate reading of *Baird*. *See* Defendants' Reply Brief, at 9–10.

The significance of the Defendants' Section 2 defense is obvious because, if Section 2 requires the City–County Council to adopt the present configuration of districts, and no other configuration was possible in view of all the underlying facts and considerations, the Court may not need to reach the question whether that configuration violates Indiana law. *See* U.S. Const. Art. VI. . . .

Order of November 5, 1993, at 2–4.

In their response to the Court's Order, the Defendants acknowledge that Section 2 does not require the Council to draw the boundaries as they are presently configured:

While Section 2, standing alone, may not expressly require the exact configuration of the boundaries of the 25 single-member districts as they are presently embodied in the Council Plan, the Council's judgment, contained in the Council Plan, as to what Section 2 required of it in creating African–American, majority, single-member

districts, when coupled with the fundamental presumption of deference that attaches to the Council's reapportionment effort, controls this Court's resolution of, and in essence "preempts," Plaintiffs' state law compactness and equal population challenges to the Council Plan on the facts of this case.

Defendants' Response to the Court's November 5, 1993 Order, at 1–2. Of course, nowhere in the Defendants' Section 2 affirmative defense is there any indication that the Defendants intended to rest merely on their "good faith" belief. Instead, their defense is "that the districting obligations imposed by I.C. 36–3–4–3(a) directly conflict with Defendants' obligations under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and that Plaintiffs' claims under I.C. 36–3–4–3(a) are therefore specifically preempted by the requirements of federal law." Answer, at 5. The Defendants now advise the Court that in fact Section 2 *does not require* the district boundaries to be drawn as they are presently configured, thereby undermining their contention that the Plaintiffs' claims are preempted by "the requirements of federal law".[1] *Id.*

In its Entry of May 3, 1991, the Court was careful to distinguish between evaluating the merits of the Defendants' Section 2 affirmative defense and satisfying the requirements for removal under 28 U.S.C. § 1443(2): "While an examination of the language of Section 2 of the Voting Rights Act and of IC 36–3–4–3(a) does not reveal the two statutes to be necessarily in conflict, such a showing is not required of the defendants in order to obtain removal." Entry of May 3, 1992, at 4. The Court then adopted the reasoning in

*Zinner, supra,* which rejected the argument that "removal under the 'refusal' clause should be permitted only when the removing defendants can allege a clear conflict between the explicit commands of state and federal law". *Id.* at 4–5, *citing, Zinner,* 415 F.Supp. at 722. Hence, while removal pursuant to the refusal clause was appropriate, the recent abandonment of Defendants' Section 2 affirmative defense requires the Court to determine whether it should continue to exercise supplemental jurisdiction over the Plaintiffs' state law claims.

The Court's supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subpart (c) states in pertinent part:

> The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction...."

28 U.S.C. § 1367(c). Considering what the Court has already explained about the Defendants' affirmative defense, the only remaining issues to be resolved in this matter are governed exclusively by the laws of Indiana and thus "substantially predominate" within the meaning of 28 U.S.C. § 1367(c)(2).

In addition, the United States Supreme Court earlier this year expressly forbade federal courts from ruling on state apportionment issues in the absence of a violation of federal law. In *Voinovich v. Quilter,* —— U.S. ——, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993), the Supreme Court ruled that: "Federal courts are barred from intervening in

---

1. The Defendants also still seem to be laboring under the assumption that the Plaintiffs bear the burden of producing evidence showing that the districts as configured do *not* violate Section 2. They state:

   > As Plaintiffs cannot establish that the Council's judgment that 60%, African–American, majority districts were required by Section 2 is wrong as a matter of law, this Court has no discretion to reexamine or alter that judgment in resolving the Plaintiffs' state law claims.... As was the case at the May, 1991 preliminary injunction hearing, Plaintiffs have neither demonstrated that the Council's 60% African–American, majority population judgment is vio-

   lative of Section 2 nor offered any better plans in terms of compactness and equal protection that equally respect the Council's 60% judgment.

   Brief at 8, 11. The Plaintiffs must carry the burden of proof as concerns the claims set forth in their complaint. They are not required to disprove the Defendants' affirmative defense. As the Court explained in its Order, "[t]he plain meaning of [the Defendants' Section 2 affirmative defense] is that Section 2 left the City–County Council no other choice but to draw the boundaries as they are presently drawn, *a defense which the Defendants bear the burden of proving."* Order, at 2 (emphasis added).

state apportionment in the absence of a violation of federal law precisely because it is the domain of the States, and not the federal courts, to conduct apportionment in the first place." *Id.* at ——, 113 S.Ct. at 1156. This Court is unable to find any violation of federal laws in the record before it. Accordingly, we must decline to exercise supplemental jurisdiction over the Plaintiffs' claim that the Council's redistricting plan violates Ind.Code § 36–3–4–3(a).

## CONCLUSION

The Court's decision today in no way should be taken as indicating an unwillingness to enforce federal law. An examination of the record indicates, however, that because there are no federal laws left to enforce in this case, the Supreme Court's ruling in the recent *Voinovich* case necessarily applies: unless there is a violation of *federal law*, federal courts are not to intervene in state apportionment decisions. Voters in Marion County need not be troubled by this outcome. *Both the federal and state courts* are charged with the responsibility of upholding the Voting Rights Act, which means that no matter what the final configuration of districts that the City–Council adopts, only a plan that passes muster under that Act will survive to implementation.

While the Court wishes that the ruling that it makes today could have been reached through a less circuitous route, such a short cut could not have been made without violating the procedural laws that this Court is required to follow. Jurisdiction under 28 U.S.C. § 1443(2) is not optional; the Court was required to hear the Defendants on their federal affirmative defense. Having done that, the Court is now required to allow Indiana's courts to resolve the remaining state-law issues in this case.

The Defendants' motion to strike is denied.

This matter is hereby dismissed without prejudice and remanded to Marion County Superior Court, Marion County, Indiana.

It is so ORDERED.

ORDER OF DISMISSAL AND REMAND

In accord with the Court's Entry in the above named action, this matter is hereby dismissed without prejudice and remanded to Marion County Superior Court, Marion County, Indiana. Each of the parties is to bear its respective costs in this case.

It is so ORDERED this 5th day of January, 1994.